**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JANE KINKADE, individually and on behalf of
all others similarly situated,

                       Plaintiff,

             - against -

ESTATE INFORMATION SERVICES, LLC,

                      Defendant.
-------------------------------------------------------------X

                          **MEMORANDUM AND ORDER**

                             CV 11-4787 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**      P<small>RELIMINARY</small> S<small>TATEMENT</small>

      In this Fair Debt Collection Practices Act ("FDCPA") action, Plaintiff Jane Kinkade

("Plaintiff" or "Kinkade") asserts claims against Estate Information Services, LLC ("Defendant"

or "EIS") pursuant to 15 U.S.C. § 1692 *et seq*. Defendant moves to dismiss Plaintiff's Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for lack of standing and for failure to state a

claim. For the reasons that follow, Defendant's motion to dismiss is GRANTED in part and

DENIED in part.

**II.**      B<small>ACKGROUND</small>

      The following facts are taken from Plaintiff's Amended Complaint, which the Court must

accept as true for purposes of this motion to dismiss, as well as from the single exhibit annexed

to the Amended Complaint. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

      Plaintiff is a recent widow. Am. Compl. [DE 6] ¶ 1. On or about July 26, 2011,

Defendant mailed a form letter seeking payment of a debt allegedly owed by Plaintiff's recently

deceased husband, Gerald C. Kinkade (the "Letter"). *Id.* ¶¶ 13, 17, 37, Ex. A. Plaintiff received,

opened, and read the Letter in her residence, where she lives alone. *Id.* ¶¶ 14-15.

The Letter is addressed "To the Estate of GERALD C KINKADE." *Id.*, Ex. A. The

Letter lists the debtor (Gerald C Kinkade), the amount of the debt ($3,573.95) and account

information in the "Re" line and then reads as follows:

> Dear Family:
>
> We understand this may be a difficult time for the family. Estate Information Services has been hired by our client to assist the Estate in bringing to a resolution the outstanding balance owed by the decedent on the above account. Therefore, we need to receive from you pertinent estate information so that we can file an estate claim for our client. Please call this office at the number above with this information.
>
> However, the balance may be paid by merely returning the below payment coupon, along with payment of the amount referenced above, $3,573.95 and no estate claim will be filed.
>
> Again we extend our deepest sympathies to the family during this difficult time. You have our commitment that we will do our best to make the resolution of the payment process as quick and easy as possible.
>
> *Unless, within thirty (30) days after receipt of this notice you dispute the validity of the debt, or any portion thereof, we will assume the debt is valid. If you notify us in writing within said 30 days that the debt or any portion thereof is disputed, we will obtain verification of the debt and will mail such verification to you. In addition, upon your written request within said 30 days, we will provide the name and address of the original creditor if different from the current creditor.*
>
> **This is an attempt to collect a debt from the Estate, and not from the family personally, and any information obtained will be used for that purpose.**
>
> **This communication is from a debt collector.**

*Id*. (emphasis in original).[1]  The payment coupon referred to in the body of the Letter appears at the bottom, below a dotted line, in the middle of which is written, "Cut along this line."  The coupon instructs the payer to make the check payable to "Citibank NA," and to mail payment to Defendant at the address provided.  It lists the debtor as "GERALD KINKADE," and restates the amount allegedly owed.  *Id*.

Plaintiff alleges that the Letter led her to believe that if she did not pay the Defendant, then Defendant would file a claim against her late husband's estate and that such filing would cost Plaintiff money.  *Id*. ¶ 25.  Plaintiff alleges that Defendant actually had no intention of filing an estate claim.  *Id*. ¶ 18.  Defendant has not filed an estate claim.  *Id*. ¶ 19.  Plaintiff also alleges that the Letter led her to believe that she was responsible for the debts of her late husband.  *Id*. ¶¶ 31-32.

## III.  STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563,

---

[1]  The bottom of the Letter reads, "See Reverse Side for Special State Disclosures."  Am. Compl., Ex. A.  The copy of the Letter annexed to Plaintiff's Amended Complaint does not include this reverse side, but the copy annexed to Plaintiff's original complaint does.  *See* Compl. [DE 1] Ex. A.  The disclosures relate to consumer rights under various state statutes and do not bear on the issues presently before the Court.  *See id*., Ex. A.

127 S. Ct. 1955 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. First, a district court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

IV.   <u>DISCUSSION</u>

Plaintiff alleges that Defendant's actions violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(10), and 1692d. Am. Compl. ¶ 48. Defendant moves to dismiss the claims brought under §§ 1692e, e(2), e(3), e(5), and e(10) for "lack of standing," *see* Def.'s Mem. [DE 9-1] at 3-5, and moves to dismiss the 1692d claim for failure to state a claim, *id*. at 6.

Before turning to Defendant's arguments for dismissal, the Court must address a preliminary issue. After this motion was fully briefed, Plaintiff submitted for the Court's consideration a "Statement of Policy" published by the Federal Trade Commission ("FTC") on July 27, 2011, which discusses debt collection communications in connection with the collection of a decedent's debts. *See* DE 17-1. Defendant responded, urging the Court to disregard the

Statement of Policy.  As Defendant acknowledges, Plaintiff's opposition to Defendant's motion to dismiss was filed on December 16, 2011, several months after the Statement of Policy was published.  Thus, the Statement is not new authority since it was available at the time Plaintiff submitted her brief.  Nevertheless, the Statement of Policy contains relevant information that is publicly available in the Federal Register, *see* 76 Fed. Reg. 44,915 (July 27, 2011), 2011 WL 3099776, and the Court will not disregard it simply because Plaintiff belatedly brought it to the Court's attention.  *See Danieu v. Teamsters Local 264*, No. 08-CV-500, 2011 WL 1259839, at *3 (W.D.N.Y. March 31, 2011) (granting leave to file new case law authority even though case was decided nine months before motion was filed); *Strand v. U.S. Bank Nat'l Ass'n*, No. 02-CV-1094, 2004 WL 5266927, at *2 (C.D. Cal. March 12, 2004) (considering new authority over objection because it was relevant to the Court's analysis).  The Statement of Policy is however, not binding, as Plaintiff acknowledges, and the Court will consider it only to the extent that it is persuasive.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight of [agency opinion] in a particular case will depend upon . . . all those factors which give it power to persuade, if lacking power to control."); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 127 (2d Cir. 2003) (drawing support from EEOC enforcement guidelines that the court found to be persuasive).  As to Defendant's argument that the Court should ignore the Statement of Policy because it became effective August 29, 2011, approximately one month after the Letter was sent, the Court concludes that while the FTC enforcement strategy announced in the Statement became effective on August 29, 2011, there is nothing to suggest that it's interpretation of the law as of that date was in any way novel.

**A.     Defendant's Motion to Dismiss Plaintiff's § 1692e Claims**

Section 1692e of the FDCPA contains a general prohibition against the use of "false, deceptive, or misleading characterizations or means in connection with the collection of any debt" by a debt collector.  Subsection e(2) prohibits the false representation of "(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  "The false representation or implication that any individual is an attorney or that any communication is from an attorney" is proscribed by subsection e(3).  Subsection e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."  Subsection e(10) bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Defendant argues that Plaintiff lacks standing to bring any claim arising under § 1692e because Plaintiff is not a consumer and she has not alleged "injurious exposure."  Def's. Mem. at 3-5; Def's. Reply Mem. [DE 13] at 6-9.  Plaintiff maintains that she has standing even though she is not a consumer.  Pl's. Mem. [DE11] at 8-18.

### 1.     Standing Under the FDCPA

In order to establish standing under the Constitution, a plaintiff must demonstrate that he or she suffered an "injury in fact," that the injury is fairly traceable to the challenged action, and that it is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992).  The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing." *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010).  In analyzing whether a plaintiff has

alleged an injury in fact, courts look to "whether plaintiff suffered a cognizable statutory injury and not whether a plaintiff suffered actual damages." *Id*.

Although some sections of the FDCPA refer specifically to consumers, the civil liability provision, provides that "any debt collector who fails to comply with any provision of this subchapter with respect to *any* person is liable to such person . . . ." 15 U.S.C. § 1692k(a) (emphasis added). The statute "intentionally utilizes the broadest possible language to allow *any person* exposed to a proscribed debt collection practice to sue." *Doyle v. Midland Credit Mgmt., Inc.*, No. 11-CV-5571, 2012 WL 1666397, at *3 (E.D.N.Y. May 11, 2012) (emphasis in original) (internal quotations omitted). Congress explained the reach of the FDCPA as follows:

> This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal. Another group of people who do not owe money, but who may be deliberately harassed are the family, employer and neighbors of the consumer. These people are also protected by this . . . bill.

*See Bank v. Pentagroup Fin., LLC*, No. 08-CV-5293, 2009 WL 1606420, at *3 (E.D.N.Y. June 9, 2009) (quoting H.R. Rep. No. 131, 95th Cong. 1st Sess. 8).

"Despite the broad language of § 1692k, various courts have found that only a 'consumer' has standing to sue under particular sections of the FDCPA that specifically regulated communications 'with a consumer.'" *Id*. at *4 (collecting cases). For example, courts have held that claims under § 1692c(b), which prohibits a debt collector from communicating "in connection with the collection of any debt, with any person other than the <u>consumer</u>, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector," may only be brought by the consumer. *See id*.

(emphasis supplied). The Second Circuit has not "specifically ruled as to which, if any, sections of the FDCPA are necessarily limited to consumers." *Sibersky v. Goldstein*, 155 Fed. App'x 10, 11 (2d Cir. 2005).

In *Sibersky*, the court analyzed the plaintiff's claims that the defendant violated §§ 1692 e(11), e(5), and g. *Id*. at *11. As to these subsections, the court held that for an offending communication to be considered "with respect to" a person "other than the debt consumer or someone standing in the consumer's shoes, that person would have to plead some injurious exposure to the communication to have standing to sue." *Id*. at *11-12. Plaintiff here brings claims under § 1692e, e(2), e(3), e(5), and e(10). Although the only one of these claims addressed in *Sibersky* was subsection e(5), the standard set forth there applies to all of the Plaintiff's claims. Subsections e, e(2), and e(3) do not mention consumers; thus, a non-consumer has standing to bring these claims. *See Schwartz v. Resurgent Capital Servs., LP*, No. 08-CV-2533, 2009 WL 3756600, at *4 (E.D.N.Y. Nov. 9, 2009) (applying *Sibersky* to a subsection e claim). While e(10) refers to a consumer, the provision is not limited to consumer-directed behavior. Rather, it prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt <u>or</u> to obtain information concerning a consumer." 15 U.S.C. § 1692e(10) (emphasis supplied). Thus, the Court cannot conclude that Plaintiff has no standing to assert a § 1692e(10) claim.

Under *Sibersky*, in order to have standing, Plaintiff must: (1) be a consumer; (2) stand in the shoes of the consumer; or (3) allege injurious exposure. 155 Fed. App'x at 11. Plaintiff does

not claim that she stands in the shoes of her husband, Gerald Kinkade.[2]  It is unclear to the Court

whether the Plaintiff is asserting that she has standing as a consumer.  Plaintiff's Memorandum

of Law is generally focused on demonstrating that non-consumers have standing to sue under the

FDCPA.  In the Amended Complaint, however, Plaintiff alleges that she is a consumer under the

FDCPA, *see* Am. Compl. ¶ 8, and in her Memorandum of Law, Plaintiff points out that the letter

was directed to the debtor's "Family" and "attempts to collect the debt from the Plaintiff," *see*

Pl's. Mem. at 16.  The FDCPA defines "consumer" as "any natural person obligated or allegedly

obligated to pay any debt."  15 U.S.C. § 1692a(3).  Courts have held that plaintiffs who receive a

debt collection letter which erroneously alleges that the plaintiff owes a debt have standing as

consumers under the FDCPA.  *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246,

257-58 (S.D.N.Y. Dec. 15, 2011); *Shapiro v. Law Offices of Cohen & Slamowitz, LLP*, No.

06-CV-3773, 2007 WL 958513, at *4 (S.D.N.Y. March 28, 2007).  Here, Plaintiff alleges that

she was "mislead[sic] as to whether she was obligated to pay money for the debts that her

deceased husband had accumulated."  Am. Compl. ¶ 29.  In light of the fact that on a motion to

dismiss for lack of standing, the court must construe all reasonable inferences that can be drawn

from the allegations in favor of the plaintiff, *see Brooklyn Legal Servs. Corp. v. Legal Servs.*

*Corp.*, 462 F.3d 219, 226 (2d Cir. 2006), it is possible that Plaintiff has standing as a consumer.

The Court, however, need not reach this issue, which the parties did not brief, because the

Plaintiff has standing based on her allegations of injurious exposure.

---

[2]      An example of a plaintiff who stands in the shoes of a consumer is the estate of a
decedent.  *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994).  Plaintiff
does not assert claims on behalf of her husband's estate.  Indeed, the thrust of her claim is that
Defendant improperly attempted to get Plaintiff to pay for debts owed by the estate.

## 2.     *Plaintiff's Alleged Injurious Exposure*

The precise contours of what constitutes "injurious exposure" have not been drawn by the Second Circuit.  *See Schwartz*, 2009 WL 3756600, at *4 ("'[T]he Second Circuit has not yet offered a precise definition of 'injurious exposure.''").  In *Sclafani v. BC Services, Inc.*, No. 10-CV-61360, 2010 WL 4116471, at *3 (S.D. Fla. Oct. 18, 2010), the court interpreted *Sibersky* as requiring "only that the non-consumer plaintiff prove that he was harmed under a particular provision of § 1692 – in other words, the offending communication was directed at the plaintiff."  Although not explicitly stated, this was also the approach followed by the court in *Bank*, 2009 WL 1606420.  In *Bank*, a case involving an automated debt collection program that negligently made numerous calls to an incorrect number, the court held that the plaintiff sufficiently alleged injurious exposure "[b]ased on the value of calls alleged . . . and the fact that some did not identify the debt consumer or contain a return phone number."  *Id*. at 5.  Notably, the court did not mention any specific damages alleged by the plaintiff other than the exposure to the unlawful conduct.  *See id.*; *see also Doyle v. Midland Credit Mgmt., Inc.*, No. 11-CV-5571, 2012 WL 1666397, at *3 (E.D.N.Y. May 11, 2012) (holding that non-consumer had standing where defendant placed allegedly unlawful calls to his home).

The Court agrees with the approach taken in *Sclafani*, *Bank*, and *Doyle* and thus will analyze the instant claims with a view to whether Plaintiff has alleged exposure to unlawful conduct and/or that the unlawful conduct was directed at her.[3]  This approach is consistent with

---

[3]     Defendant attempts to distinguish *Bank* on the grounds that *Bank* involved a § 1692d claim and Defendant "does not assert a lack of standing as respects the § 1692d claim."  Def's. Reply Mem. at 2.  Defendant offers no reason why the rationale of *Bank* should not apply to Plaintiff's § 1692e claims and the Court finds none.

10

Second Circuit precedent holding that "actual damages are not required for standing under the FDCPA" in general, and a lack of actual damages "does not necessarily suggest that [the plaintiff] was not injured for purposes of his FDCPA claim." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003). Indeed, "by providing for statutory damages and attorneys fees for successful plaintiffs, the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobsen v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 96 (2d Cir. 2008) (affirming award even though the plaintiff acknowledged that the underlying debt was valid and that he did not feel harassed, threatened, or misled by the letter); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("Where a plaintiff prevails, whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court."); *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993) (upholding award of statutory damages and attorney's fees where plaintiff did not request actual damages); *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 326 (D. Conn. 2009) (holding that damages are not necessary to establish standing under the FDCPA and all that is required is that the defendant failed to comply with the statute with respect to the plaintiff); *Ehrich*, 681 F. Supp. 2d at 270 (holding that plaintiffs had standing to bring claims based on Spanish-language communication even though they did not speak Spanish because "their mere receipt of a debt collection letter that potentially violated the FDCPA is sufficient to establish standing").

Plaintiff plausibly alleges that the offending communication, the Letter, was directed at her and that the letter was an unlawful communication. Plaintiff alleges that she received and opened the Letter at her home, where she lives alone. *See* Am. Compl. ¶¶ 14-15. The Letter,

though addressed to the estate of Plaintiff's late husband, contains the salutation, "Dear Family." *Id*., Ex. A. The next line is a statement of purported consolation: "We understand this may be a difficult time *for the family*." *Id*. (emphasis added). The third paragraph reads, "Again we extend our deepest sympathies *to the family* during this difficult time. *You* have our commitment that we will do our best to make the resolution of the payment process as quick and easy as possible." *Id*. (emphasis added).

Based on the references to George Kinkade's family as set forth in the letter, the Court concludes that the letter was directed at Plaintiff. Defendant argues that the references in the letter to the Estate of Gerald Kinkade (the "Estate") demonstrate that the Letter was directed to the Estate, not Plaintiff. The Court disagrees. The fact that address block references the "Estate of GERALD C KINKADE" does not counteract the Letter's salutation and consoling remarks which indicate that the Letter is directed to Gerald Kinkade's family, i.e., Plaintiff. Defendant has offered no explanation for why it did not use language such as "Dear Estate" or "Dear Executor/Executrix" if the intention was to communicate with the Estate or an Estate representative, nor does Defendant explain why it facilitated a way for the family to pay the debt if it merely sought payment from the Estate. To support its argument that the Letter was addressed to the Estate, Defendant points to the sentence printed in bold at the bottom of the letter, which states that Defendant is attempting "to collect a debt from the Estate, and not the family personally . . . ." *Id.* However, if the letter were actually directed to the Estate and was sent for the purpose of collecting the Estate's debt, it would serve no purpose to tell the Estate that Defendant was not interested in payment from the debtor's family. It only becomes necessary to provide such an assurance if the letter itself is directed at the family.

Defendant relies on *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) and *Schwartz*, 2009 WL 3756600, to support its argument that Plaintiff lacks standing because the communication at issue was not addressed to her. Both cases are distinguishable. In *Kropelnicki*, the court held that the plaintiff lacked standing because even if the letter at issue was "threatening or misleading, it was not threatening or misleading as to Kropelnicki because it was not addressed to her." *Kropelnicki*, 290 F.3d at 130. The address block of the letter in that case contained the name of Kropelnicki's daughter, Mila Evanauskas, but listed Kropelnicki's address. *Id*. at 124. The salutation read, "Dear Ms. Evanauskas" and the subject line referenced a state court lawsuit in which both Evanauskas and Kropelnicki were defendants. *Id*. The body of the letter did not reference Kropelnicki in any way. *Id*. The Court agrees that the only reasonable interpretation of the letter in *Kropelnicki* was that it was directed at Evanauskas, but mistakenly addressed to Kropelnicki. That is not the situation here.

The collection letter in *Schwartz* was addressed to "Cynthia A. c/o Yitzchok Schwartz." *Schwartz*, 2009 WL 3756600, at *1. The salutation read, "Dear Cynthia A.," and the header on the letter's second page also referenced Cynthia A. *Id*. Schwartz did not know Cynthia A., nor did he allege or argue that he owned, inhabited, or worked at the building to which the letter was addressed. *Id*. Other than the "c/o" line, plaintiff was not mentioned anywhere in the document. *Id*. Citing *Kropelnicki*, the court held that the letter could not be misleading as to plaintiff because it was not addressed to him. *Id*. at *4. Unlike *Kropelnicki* and *Schwartz*, in which it was self-evident that the letter was not directed at the recipient, the Letter in this case was directed at Plaintiff. *See Mathis v. Omnium Worldwide*, No. Civ. 04-1614-AA, 2005 WL 3159663, at *4 (D. Or. Nov. 27, 2005) (rejecting defendant's claim that the collection activities were directed at

the deceased's estate as opposed to the plaintiff where defendant called plaintiff and mailed letters to her residence); *Flowers v. Accelerated Bureau of Collections, Inc.*, No. 96-CV-4003, 1997 WL 136313, at *7-8 (N.D. Ill. March 19, 1997) (holding that wife of debtor had standing based on allegation that debt collector called her and told her she had to pay her husband's debt).[4]

Having concluded that Plaintiff sufficiently alleges that the Letter was directed at her, the Court next considers the other aspect of the injurious exposure inquiry – whether sending the Letter constitutes unlawful conduct. Subsection e contains a general prohibition against the use of "false, deceptive, or misleading characterizations or means in connection with the collection of any debt" by a debt collector. Without analyzing whether Plaintiff has stated a claim for each and every § 1692e violation alleged, the Court concludes that, assuming the factual allegations in the Amended Complaint to be true, Plaintiff has plausibly alleged unlawful false and misleading conduct by Defendant. *See Clomon*, 988 F.2d at 1320 ("[I]t should be emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e –

---

[4]    Defendant attempts to distinguish *Mathis* from this case by pointing out that the plaintiff in *Mathis* "received many letters and telephones [sic] from the defendant debt collector," whereas Plaintiff here received only one letter. Def's. Reply Mem. at 6. This distinction is unpersuasive, however, because "[a] single violation of § 1692e is sufficient to establish civil liability under the FDCPA." *Clomon*, 988 F.2d at 1318.

Defendant also relies on two cases that purportedly distinguish *Mathis* from the facts of this case, but neither is persuasive. In *Volden v. Innovative Financial Systems*, 440 F.3d 947 (8th Cir. 2006), the plaintiff sued a debt collector for a misrepresentation it made to a third party. The Eighth Circuit refused to apply *Mathis* because "the thrust of *Mathis* was to clarify that the statutory language of the FDCPA does not limit causes of actions to those brought by a consumer, so long as the alleged conduct was directed *at the plaintiff*." *Id.* at 954 (internal quotation marks omitted) (emphasis in original). Thus, *Mathis* was distinguishable from *Volden* because the misrepresentation at issue in *Volden* was not made to the plaintiff. The dispositive ruling in *Pulawa v. Federal Recovery Services*, No. 95-CV-159, 2006 WL 1153745, at *9 (D. Haw. May 1, 2006) was that the defendant was not a debt collector under the FDCPA, "obviat[ing] an inquiry into [the plaintiff's] standing under the Act."

regardless of whether the representation in question violates a particular subsection of that provision.")

On this point the Court finds that language from the Statement of Policy Regarding Communications in Connection With the Collection of Decedents' Debts to be persuasive. In the statement, the FTC stated its position that it is a violation of § 1692e to "mislead those persons [who have the authority to pay the decedent's debts] about whether they are personally liable for those debts, or about which assets a collector could legally seek to satisfy those debts." The Statement continued:

> Commentators, including debt collectors, strongly agreed with the FTC that debt collectors have an affirmative responsibility under the law not to mislead individuals they contact about their responsibility to pay for the decedent's debts.
>
>           *    *    *
>
> Based on the comments received and its law enforcement experience, the Commission concludes that the information that must be disclosed to avoid deception when collectors contact individuals with the authority to pay the decedent's debts depends on the circumstances. The proposed Statement suggested two possible disclosures: (1) That the collector is seeking payment from the assets in the decedent's estate; and (2) the individual could not be required to use the individual's assets or assets the individual owned jointly with the decedent to pay the decedent's debt. These disclosures generally will be sufficient to prevent deception. Nevertheless, there may be circumstances in which these disclosures are not applicable or sufficient to prevent deception. The collector has the responsibility of tailoring the information it discloses to avoid misleading consumers.

76 Fed. Reg. 44,915, 44,922 (July 27, 2011), 2011 WL 3099776. The Court cannot conclude that the Defendant here properly tailored the information in the Letter to avoid misleading Plaintiff. The Amended Complaint alleges that Defendant's letter was deceptive in that it gave her the impression that she was responsible for her late husband's debt. Am. Compl. ¶¶ 21-22,

29.  Plaintiff also alleges that in the Letter, Defendant threatened to file an estate claim that it had no intention of filing and led Plaintiff to believe that the filing of a claim would cost her money. *Id.* ¶¶ 18, 20, 25, 30.  These are plausible allegations of deceptive conduct directed toward Plaintiff sufficient to confer standing to bring a claim under § 1692e.

### B.  Defendant's Motion to Dismiss Plaintiff's § 1692d Claim

Defendant does not object to Plaintiff's standing with respect to her § 1692d claim, but rather seeks dismissal based on Plaintiff's failure to state a claim.  *See* Def's. Mem. at 6; Def's. Reply Mem. at 1-5.  Pursuant to 15 U.S.C. § 1692d "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  The following specific conduct is prohibited:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.* These subsections are not exclusive and a plaintiff may, as Kinkade does here, assert a claim under the generalized, catch-all provision. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985).

Defendant advances several arguments as to why Plaintiff's claim fails. Specifically, Defendant argues that it sent only one letter to Plaintiff; that Defendant's conduct is dissimilar to the examples of conduct § 1692d prohibits; and the Letter's statement that Defendant intended to file an estate claim was truthful and cautionary, not abusive. Def's. Mem. at 6. Plaintiff counters that "seeking to collect money from a widow for a debt she did not know [sic] under false threat of filing an estate claim is harassing." Pl's. Mem. at 23. On reply, Defendant argues that the "least sophisticated consumer" standard does not apply to § 1692d claims and the Letter was not directed at Plaintiff. [5] The Court need not address each and every one of Defendant's arguments

---

[5] Defendant urges this Court to adopt a modified "least sophisticated consumer" standard for claims arising out of § 1692d violations. *See* Def's. Reply Mem. at 3-5. The standard originates in the Eleventh Circuit, and views § 1692d claims "from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter*, 760 F.2d at 1179. Plaintiff maintains that courts within the Second Circuit apply the unmodified "least sophisticated consumer" standard to § 1692d claims. Pl's. Mem. at 6.
Courts in the Second Circuit have taken different approaches on this issue. *Compare Kavalin v. Global Credit & Collection Corp.*, No. 10-CV-314, 2011 WL 1260210, at *3 (W.D.N.Y. Mar. 31, 2011) (applying modified standard) *with Monahan v. NRA Grp. L.L.C.*, No. 10-CV-00638, 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011) (applying least sophisticated consumer standard). Another court within this Circuit has held that while the *Jeter* standard generally applies to §1692d claims, where "the challenged conduct includes a communication regarding the debt, courts in this circuit evaluate the content of the communication from the perspective of the 'least sophisticated consumer.'" *Hinderliter v. Diversified Consultants, Inc.*, No. 10-CV-1314, 2012 WL 3888148, at *3 (N.D.N.Y. Sept. 7, 2012). Since, as explained *infra*, Plaintiff does not state a § 1692d claim under either standard, this Court need not determine which standard is appropriate. The Court notes, however, that Defendant offers no explanation for its argument that since "the *Jeter* Standard applies . . . this claim must be dismissed for failure to state a claim." Def's. Reply Mem. at 5. There is nothing in *Jeter* which suggests that the standard adopted there is more lenient than the "least sophisticated consumer" standard. Rather, the *Jeter* standard was meant to take into account the fact that "[w]hether a consumer is more or

because the Court finds that the conduct alleged, i.e., a false threat, is covered by § 1692e (prohibiting "false, deceptive, or misleading" representations or methods) and does not state a claim under § 1692d.

"'Section 1692d is meant to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection.'" *See Johnson v. Capital Mgm't Servs.*, No. 10-CV-467A, 2011 WL 6012509, at *5 (W.D.N.Y. Dec. 1, 2011) (holding that collection efforts, while aggressive, did not rise to the level of harassment contemplated by § 1692d) (quoting *Monahan*, 2011 WL 3901877, at *2). In *Kavalin v. Global Credit & Collection Corp.*, No. 10-CV-314, 2011 WL 1260210, at *3 (W.D.N.Y. Mar. 31, 2011), the plaintiff alleged that the defendant's collection letter misstated her legal rights, thereby deceiving her in violation of §§ 1692e, 1692e(5), and 1692e(10), and harassing her in violation of § 1692d. Regarding the plaintiff's § 1692d claim, the court noted that "'[d]eception or falsehood alone . . . is wholly different from the conduct condemned in subsections (1) through (6) of § 1692d" and "Congress did not contemplate the prohibition of deceptive conduct *per se* within the confines of § 1692d.'" *Id.* at *5 (quoting *Jeter*, 760 F.2d at 1179). In this case, while Plaintiff has alleged deceptive conduct, none of the facts alleged reflect harassment or abuse.

Although a § 1692d violation is not limited to the specific conduct listed in § 1692d(1)-(6), courts look to the enumerated conduct to determine what constitutes a violation of the general bar on abusive and harassing conduct. For example, in *Lane v. Fein, Such, and*

---

less likely to be harassed, oppressed, or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather, such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency." 760 F.2d at 1179 (noting that a sophisticated consumer who was poor or on probation may be at the mercy of the debt collector and therefore more susceptible to abuse).

*Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011), the court held that the serving the plaintiff with a state court complaint which contained an allegedly false statement was not similar in seriousness to any of the examples listed in § 1692d. The Court, therefore, dismissed the claim. Likewise, the conduct Plaintiff alleges here is of a different character than any of the examples listed in the statute.

The Court also notes that Plaintiff's claim is based on the sending of a single letter and § 1692d claims typically involve a *pattern* of conduct. *See*, *Doyle*, 2012 WL 1666397, at *4 (holding that plaintiff's receipt of 22 to 28 phone calls which persisted after plaintiff told defendant it had the wrong number was plausibly harassing); *Curto v. Palisades Collection, LLC*, NO. 07-CV-529, 2011 WL 5196708, at *6 (W.D.N.Y. Oct. 31, 2011) (holding that filing of four collection actions may violate §1692d while the filing of one action would not). While the sending of a single letter can violate certain provisions of the FDCPA, *Clomon*, 988 F.2d at 1318, a single letter which contains no abusive language and is not otherwise inherently harassing does not give rise to a § 1692d claim under the FDCPA.

Plaintiff relies on three cases to support her argument, *Henneberger v. Cohen & Slamowitz, LLP*, No. 07-CV-804, 2010 U.S. Dist. LEXIS 31250 (W.D.N.Y. March 31, 2010); *Evanauskas v. Strumpf*, No. 300-CV-1106, 2001 WL 777477, at *4 (D. Conn. June 27, 2001) and *Mathis*, 2005 WL 3159663. *Henneberg* and *Mathis* involved allegations of much more serious and potentially abusive conduct than what is at issue here. In *Mathis*, the court held that there were questions of fact whether the defendant's conduct was harassing and abusive. 2005 WL 3159663, at *5. Unlike the single letter sent by Defendant here, *Mathis* involved "several telephone calls" and "numerous collection letters," including certain communications directed to

19

plaintiff after the plaintiff's attorney sent a cease and desist letter and requested that all communication go directly through counsel. *Id*. at *1-2. In *Henneberg*, the court held that there were issues of fact as to whether the defendant's telephone calls which threatened to seize the plaintiff's exempt Social Security benefit and pension income were harassing. 2010 U.S. Dist. LEXIS 31250, at *11-12. Here, while Defendant allegedly attempted to deceive Plaintiff into making a payment she did not owe, no overt threats were made. While such conduct may constitute a violation of § 1692e's bar on deceptive practices, it is not the type of abusive or harassing conduct § 1692d prohibits. The final case, *Evanauskas*, was decided in the context of plaintiff's motion for default judgment and the single sentence analyzing the § 1692d claim states only that the letter at issue "violated 15 U.S.C. §§ 1592d [sic] and 1592f [sic] by including the mother's name in the subject line of the letter when the mother was not liable for any part of the plaintiff's debt." 2011 WL 777477, at *4.

For the foregoing reasons, Plaintiff's claim under § 1692d is dismissed.

## VI.    CONCLUSION

Based on foregoing findings, Defendant's motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED as to Plaintiff's claims arising from Defendant's alleged violations of 15 U.S.C. § 1692d, and DENIED as to Plaintiff's claims arising from Defendant's alleged violations of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), and 1692e(10).

A telephone status conference is scheduled for October 17, 2012 at 11:00 a.m. to discuss discovery in this matter. Counsel for Plaintiff is directed to initiate the call to Chambers with all parties on the line.

**SO ORDERED.**

Dated: Central Islip, New York
      September 28, 2012


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge